## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

ZACHARY SPADA, *pro se,*　　　　　　　　　:
　　Plaintiff,　　　　　　　　　　　　　:

　　　　　*v.*　　　　　　　　　　　　　:　　**26 CV 207**
ERIE COUNTY, NEW YORK;　　　　　　:　C.A. No.＿＿＿＿＿＿＿
ERIE COUNTY HOLDING CENTER;　　　:
SHERIFF OF ERIE COUNTY　　　　　　:
(in official and individual capacity);　　　:
JOHN DOE CORRECTION OFFICERS:　　　
1–10;　　　　　　　　　　　　　　　:
JANE DOE MEDICAL AND　　　　　　:
MENTAL HEALTH PROVIDERS 1–5;　　:
　　Defendants,　　　　　　　　　　:
*In their individual and official capacities.* : *JURY TRIAL DEMANDED*

### COMPLAINT

### I. JURISDICTION

1. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

2. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

### II. VENUE

3. Venue is proper in the Western District of New York under 28 U.S.C. § 1391 because all events occurred in Erie County, New York.

## III. PARTIES

4. Plaintiff Zachary Spada was a pretrial detainee housed at Erie County Holding Center ("ECHC") from approximately December 12, 2025 until January 23, 2026.

5. Defendant Erie County is responsible for the policies, practices, and customs of ECHC.

6. Defendant Erie County Holding Center is the jail facility where the violations occurred.

7. Defendant Sheriff of Erie County is responsible for operations, training, and supervision.

8. Defendants John Doe Correction Officers are officers employed at ECHC who participated in or allowed the misconduct.

9. Defendants Jane Doe Medical and Mental Health Providers are medical staff who provided psychiatric care.

## IV. FACTUAL ALLEGATIONS

*A. Intake and Housing Conditions*

10. Plaintiff arrived at ECHC on December 12, 2025.

11. Plaintiff was housed in multiple units including Alpha Short, Echo Northeast, Delta Long, and Delta Short.

12. Conditions throughout the jail were extreme and inhumane.

13. Some units were overheated to approximately 85 degrees or more.

14. Other units were freezing cold with poor airflow, broken vents, and drafts.

15. Buildings were old with inadequate climate control.

16. Plaintiff was subjected to constant noise from officers talking loudly all night.

17. Lights were kept on constantly, depriving Plaintiff of sleep.

### B. Indigent Deprivation

18. Indigent detainees were not provided basic necessities such as shower shoes, over-the-counter medical products, or proper hygiene supplies.

19. Plaintiff was only provided soap, toothpaste, and a security toothbrush.

20. Indigent stationary was advertised as two envelopes and eight pages but only two pages were provided.

### C. Legal Mail Interference

21. Plaintiff's legal mail from his attorney was opened outside his presence.

22. Plaintiff was denied pens and supplies needed to communicate with counsel.

### D. Mental Health Treatment and Forced Medication

23. On December 13, 2025, Plaintiff informed forensic mental health staff that he had PTSD and autism.

24. Despite this, Plaintiff was treated as having Bipolar Type I.

25. Medical records were obtained from LECOM.

26. Plaintiff saw a mental health provider on December 24, 2025.

27. Plaintiff was started on Invega on December 29, 2025.

28. After approximately ten days, Plaintiff experienced severe agitation, nausea, vomiting, and lockjaw-like symptoms.

29. Plaintiff discontinued the medication due to these side effects.

30. Forensic staff repeatedly questioned Plaintiff about refusing medication.

### E. Abuse of Constant Watch

31. Plaintiff was placed on constant watch because he was naked in his cell.

32. Plaintiff remained on constant watch for approximately fourteen (14) days.

33. During constant watch Plaintiff:

- Was denied a mattress for about a week

- Was kept in a cold cell

- Was allowed only pants and a shirt

- Was denied water

- Could not use the toilet normally

- Was denied hygiene supplies

34. Plaintiff was monitored by a deputy 24/7 and QR code checks every fifteen minutes.

### F. Assault by Another Inmate

35. Around January 13, 2026, Plaintiff was assaulted on Delta Short by a dangerous inmate.

36. Plaintiff was not warned of the inmate's violent tendencies.

37. The inmate punched Plaintiff approximately ten times in the face.

38. Plaintiff suffered a black eye, swelling, and cuts to his lips.

39. Staff failed to intervene promptly.

40. Plaintiff was taken to medical afterward.

## G. *Use of Force by Staff*

41. In mid-January 2026, Plaintiff was beaten by correction officers on Delta Northeast.

42. Officers punched Plaintiff repeatedly in the body.

43. Plaintiff was sprayed with OC spray three times over two days.

44. Two sprays were for flushing the toilet "too much."

45. One spray occurred after Plaintiff rejected a guard's advances.

46. That guard falsely claimed Plaintiff was hitting his light and sprayed him intentionally in the buttocks/anus area.

47. Afterward, the guard slammed Plaintiff while shackled and punched him three times.

## H. *Retaliation*

48. Plaintiff filed over sixty grievances regarding conditions, medical care, safety, and abuse.

49. Plaintiff's wife contacted CNN and newspapers around January 14, 2026.

50. After media contact and grievances, Plaintiff was cut off from phone access and treated more harshly.

## V. CLAIMS FOR RELIEF

*Claim One – Unconstitutional Conditions of Confinement*

(Fourteenth Amendment)

51. Defendants subjected Plaintiff to extreme temperatures, constant noise and lighting, denial of hygiene, denial of bedding, and deprivation of basic human needs.

*Claim Two – Excessive Force*

(Fourteenth Amendment)

52. Defendants used unreasonable and punitive force by beating Plaintiff and spraying OC spray without justification.

*Claim Three – Failure to Protect*

53. Defendants knowingly housed Plaintiff with a dangerous inmate and failed to intervene promptly during the assault.

*Claim Four – Medical Indifference / Unreasonable Care*

54. Defendants misdiagnosed Plaintiff, forced psychiatric medication, and subjected him to abusive mental health conditions.

*Claim Five – Retaliation*

55. Defendants retaliated against Plaintiff for filing grievances and contacting the media by cutting phone access and increasing harassment.

*Claim Six – Interference with Legal Mail and Access to Courts*

56. Defendants opened Plaintiff's legal mail and denied supplies to communicate with counsel.

## VI. DAMAGES

Plaintiff seeks:

A. Compensatory damages for physical injury, pain, suffering, and emotional distress in the amount of $2.5 million dollars

B. Punitive damages against individual defendants, jointly and severally, in the amount of $1 million dollars

C. A permanent injunction against Defendants

D. Costs and Fees

E. Attorney's Fees

F. Any additional relief that the Court determines to be just equitable and proper.

## VII. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

## VERIFICATION

I, Zachary Spada, declare under penalty of perjury that the foregoing Complaint is

true and correct to the best of my knowledge.

Executed on January 28, 2026 at Connellsville, PA

Respectfully Submitted,

Zachary Spada
*Plaintiff, pro se*

~~1527 South Pittsburgh Street~~
~~Connellsville, PA 15425~~

1527 S. Pittsburgh St
Connellsville, PA 15425

~~1401 State St~~
~~Ste 46~~
~~Erie PA 16501~~

Zts12091@gmail.com
(814) 460-6840











Randy T. Womersley
413 E 6 St, Apt 1
Erie, PA 16507



**UNITED STATES POSTAL SERVICE.**  **Retail**

# G

## US POSTAGE PAID

## $7.55

Origin: 15425
01/29/26
4116120425-60

## USPS GROUND ADVANTAGE®

0 Lb 6.40 Oz

**RDC 01**



USDC · WDNY
FEB - 4 2026
BUFFALO

C030

SHIP
TO:



2 NIAGARA SQ
BUFFALO NY 14202-3350

### USPS TRACKING® #



9500 1141 3252 6029 9399 42





Clerk's Office
US District Court
2 Niagara Sq.
Buffalo, NY 14202